IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RED ONLINE MARKETING GROUP, LP d/b/a/ 50ONRED, | : : CIVIL ACTION |
| Plaintiff, | : |
| v. | : |
| | : NO. 14-1353 |
| REVIZER, LTD. and REVIZER TECHNOLOGIES, LTD., | : : |
| Defendants. | : |

## MEMORANDUM

BUCKWALTER, S. J.                                                                                                      April 3, 2014

Pending before the Court is Plaintiff Red Online Marketing Group, LP, d/b/a/ 50onRed ("50onRed")'s Motion for a Temporary Restraining Order and a Preliminary Injunction. The Court has reviewed Plaintiff's Motion, Defendants' Response in Opposition, and counsel's arguments at a hearing before this Court on April 1, 2014. For the following reasons, Plaintiff's Motion for a Temporary Restraining Order is denied and the Court will hold a hearing on Plaintiff's Motion for a Preliminary Injunction.

**I.      FACTUAL AND PROCEDURAL HISTORY**

Plaintiff 50onRed is a Pennsylvania limited partnership with its principal place of business in Pennsylvania. (Am. Compl. ¶ 5.) Defendants Revizer Limited and Revizer Technologies (collectively "Revizer") are Israeli limited liability companies with their principal places of business in Israel. (Id. ¶¶ 6–11.)

50onRed is an Internet marketing company "whose proprietary technology enables its customers to conduct, manage and optimize their digital advertising campaigns across its exclusive distribution network[.]" (Id. ¶ 15.) 50onRed's software "automatically detects

available space on websites or other digital content where advertising units may be displayed[,]" "displays ad units to an Internet user for sponsored articles[,]" "provide[s] an Internet user with coupons or discounts relevant to content currently being accessed[,]" displays "full-page advertisement[s] that appea[r] based on certain triggers or conditions[,]" and "shows an Internet user multiple sources for a product for which she has been searching and compares the prices from these various sources." (Id. ¶ 18.) Revizer is a "software and technology company" that "provides tools . . . that allow developers of software applications . . . to generate revenue from their freely-distributed software by displaying advertising." (Defs.' Resp. to Pl.'s Mot. for TRO, Decl. of Daniel Sagis ¶ 2.)

On June 11, 2012, 50onRed and Revizer entered into an Agreement in which Revizer obtained a "limited non-exclusive license to use 50onRed's proprietary 'Monetization Services' solely in connection with its own downloadable software," and permitted Revizer to "distribute 50onRed's advertising products . . . only on its own downloadable software applications" and then collect "a share of the revenue generated" from such distribution. (Am. Compl. ¶¶ 20, 27, 29.) In exchange, Revizer agreed not to "develop, market, sell, license or provide any software, technology or services that are similar to, or competitive with, the monetization services provided under the Agreement or [50onRed's] proprietary optimization and behavioral advertisement targeting technology, methodology, or algorithms." (Id. ¶ 21) (quoting Agreement § 5.2).)[1] The Agreement also contained a provision stating that "any breach . . . would result in irreparable injury" and that the complaining party would be entitled to injunctive relief. (Pl.'s Mot. for

---

[1] 50onRed has not attached the Agreement to its Motion, due to its "heavily negotiated" and "confidential" nature. At this stage, the Court need not review the Agreement itself to reach its decision on the Motion for a Temporary Restraining Order.

TRO, Decl. of Stephen Gill ("Gill Decl.") ¶ 30 (quoting Agreement § 5.3).)

Plaintiff 50onRed alleges that, in or around January 2013, Revizer began "marketing and illegally brokering 50onRed's software to distributors, including those it learned of only through 50onRed, and other third parties" and eventually "reverse engineered 50onRed's proprietary software, developed competing software, and began marketing its own version[.]" (Am. Compl. ¶¶ 37, 38.)

In or around August 2013, 50onRed discovered Revizer's alleged activities and, on August 20, 2013, advised Revizer's CEO that it had "reason to believe Revizer was illegally competing with 50onRed in violation of the Agreement." (Id. ¶ 46.) On August 26, 2013, Revizer sent 50onRed an e-mail indicating that it "decided to stop syndicating" its own software. (Id. ¶ 47.) Weeks later, on September 13, 2013, Revizer informed 50onRed via e-mail that a "severe issue has been brought to our attention" causing it to "pause" distributing 50onRed's services pursuant to the Agreement. (Id. ¶ 50.)

In January 2014, following Revizer's receipt of a substantial investment from a third party, 50onRed and Revizer engaged in negotiations to draft a new agreement to replace the existing one. (Id. ¶¶ 58–59.) Those negotiations did not result in a new agreement. (Id. ¶ 59.)

On March 6, 2014, 50onRed initiated the present litigation and, on March 19, 2014, filed the pending Motion for a Temporary Restraining Order and a Preliminary Injunction. Revizer filed its Response in Opposition to the Motion on April 1, 2014. On that same date, this Court conducted a hearing on the pending Motion on the issue of the temporary restraining order only. That issue is now ripe for review.

**II.    DISCUSSION**

Plaintiff 50onRed seeks a temporary restraining order pursuant to Federal Rule of Civil Procedure 65. Fed. R. Civ. P. 65. To be entitled to a temporary restraining order or a preliminary injunction, a movant must show, "(1) a likelihood of success on the merits; (2) he or she will suffer irreparable harm if the injunction is denied; (3) granting relief will not result in even greater harm to the nonmoving party; and (4) the public interest favors such relief."[2] Bimbo Bakeries USA, Inc. v. Botticella, 613 F.3d 102, 109 (3d Cir. 2010) (quoting Miller v. Mitchell, 598 F.3d 139, 147 (3d Cir. 2009)).

After reviewing the parties' briefs and hearing counsel's arguments, the Court is not convinced of the likelihood of 50onRed's success on the merits of its claim. Even assuming— for the purposes of the pending Motion only— that 50onRed has satisfied the "likelihood of success on the merits" prong, it has failed to meet its burden to show that it will suffer "irreparable harm if the injunction is denied" at this early stage.

In support of the argument that 50onRed will suffer "irreparable harm" if it is not granted a temporary restraining order, 50onRed cites section 5.3 of the Agreement, which states that "any breach . . . would result in irreparable injury." (Gill Decl. ¶ 30.) While courts have previously found these types of provisions "instructive," these provisions are not "dispositive to [the court's] irreparable harm analysis." USA Techs., Inc. v. Tirpak, No. Civ.A. 12-2399, 2012 WL 1889157 at *5 (E.D. Pa. May 24, 2012). Indeed, "[p]arties may not create a right to injunctive relief by agreement where such relief is otherwise in appropriate." Id. at *6 (citation omitted).[3]

---

[2] "The standards for a temporary restraining order are the same as for a preliminary injunction." Bieros v. Nicola, 857 F. Supp. 445, 446 (E.D. Pa. 1994) (citation omitted).

[3] In USA Technologies, the court's overriding concern was not the "irreparable harm" provision of the parties' settlement agreement, but rather that the alleged violations would impact

Here, the Court notes— without having reviewed the Agreement itself— that while the parties may have agreed that "any breach . . . would result in irreparable injury," the nearly eight-month delay between 50onRed's discovery of Revizer's alleged violation of the Agreement and the filing of this lawsuit undermines 50onRed's argument that it will suffer "irreparable harm." In the Third Circuit, "*inexcusable* delay [can] defeat . . . irreparable harm in an appropriate case[.]" Kos Pharm., Inc. v. Andrx Corp., 369 F.3d 700, 727 (3d Cir. 2004) (emphasis in original). At the hearing on the pending Motion, 50onRed argued that delaying the initiation of its suit against Revizer for nearly eight months should be excused because 50onRed spent that time attempting to resolve the matter without litigation.

The two cases on which 50onRed relies for its excusable delay argument are distinguishable from the present case. First, in Kos, the Third Circuit reversed the district court's decision to deny plaintiff's motion for a preliminary injunction in part because it found plaintiff's thirteen-month delay in bringing the suit excusable under the circumstances and not determinative of the irreparable harm question. Id. at 727–28. In Kos, however, the delay was the product of plaintiff "[seeking] relief directly and through administrative proceedings from the time it learned of the [alleged violation] through the time it filed this suit." Id. Here, unlike the Food and Drug Administration proceedings that the plaintiff immediately pursued in Kos, 50onRed did not pursue any administrative remedies to justify its delay in filing its lawsuit against Revizer.

---

a corporate board election scheduled to take place within weeks of the date of the court's order: "The harm will likely survive the election. Claims, whether proven or not, would persist after [the election]. Whether a board member would not have been defeated but for the [alleged violations] would be difficult, if not impossible, to determine." Id.

Likewise, in Novartis Consumer Health v. Johnson & Johnson-Merck Consumer Pharmaceuticals Company, 129 F. Supp. 2d 351 (D.N.J. 2000), the court found that a seven-month delay did not defeat the plaintiff's showing of irreparable harm when the delay was considered among facts not analogous to those of the present case.  Id. at 368.  In Novartis, the plaintiff presented quantifiable evidence that the defendant competitor's alleged illegal activity correlated with plaintiff's actual loss in market share.  Id.  Bearing plaintiff's actual losses in mind, the Novartis court found that "the decrease in [plaintiff's] sales constitutes a reasonable basis for believing that it is likely to suffer injury as a result of [defendant's activities]."  Id.  Even though the plaintiff did not show that the defendant's activities directly caused its losses, the court still found the losses persuasive because, when seeking a preliminary injunction, the plaintiff "need not come forward with specific evidence that the challenged claims *actually* resulted in some definite loss of sales."  Id. (emphasis added).

Here, 50onRed claims that Revizer's alleged activity "has diminished the competitive advantage 50onRed had gained in the marketplace[,]" "undermines 50onRed's efforts to provide excellent client support and service[,]" "could lead to tarnishment of 50onRed's reputation[,]" and "would prove devastating to 50onRed's business."  (Gill Decl. ¶¶ 106–110.)  Yet, unlike in Novartis, nothing in 50onRed's declarations or the attached exhibits provides the Court with any measurable proof of the purportedly "irreparable harm."  Instead, 50onRed simply states that "[i]t is impossible to quantify the amount of money that 50onRed has lost as a result of loss of competitive advantage from Revizer's breach and misappropriation."  (Id. ¶ 107.)  While 50onRed may be correct that it cannot accurately calculate losses directly caused by Revizer's alleged activities, it "need not come forward with specific evidence that the challenged claims

6

*actually* resulted in some definite loss of sales" to show irreparable harm. Novartis, 129 F. Supp. 2d at 368. Rather, it need only come forward with evidence that "constitutes a reasonable basis for believing" that Revizer caused its losses. Id. Unlike the plaintiff in Novartis, 50onRed has not made such a showing.

Neither a contract provision stating that a breach would result in irreparable harm nor a plaintiff's delay in bringing its claim is, by itself, dispositive of "irreparable harm" analysis. See USA Techs., 2012 WL 1889157, at *5; Kos, 369 F.3d at 727–28. Without more evidence, the Court cannot find that 50onRed's nearly eight-month delay in bringing its action against Revizer is excusable when measured against its burden to show "that irreparable harm . . . [is] imminent." Orson, Inc. v. Miramax Film Corp., 836 F. Supp. 309, 312–13 (E.D. Pa. 1993). At this stage of the proceedings, the Court cannot grant 50onRed the injunctive relief that it seeks. Accordingly, the Court will deny 50onRed's Motion for a Temporary Restraining Order.

### III.  CONCLUSION

For all of the foregoing reasons, the Court will deny Plaintiff 50onRed's Motion for a Temporary Restraining Order and set a hearing for its Motion for a Preliminary Injunction.

An appropriate order follows.